**No. 22-13129**

IN THE

# United States Court of Appeals for the Eleventh Circuit

U.S. SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee,*

v.

SPARTAN SECURITIES GROUP, LTD., ET AL.
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION
DISTRICT JUDGE VIRGINIA M. HERNANDEZ COVINGTON
(NO. 8:19-cv-00448-VMC-CPT)

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

KARA M. ROLLINS
JOHN J. VECCHIONE
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Phone: (202) 869-5210
Kara.Rollins@ncla.legal
John.Vecchione@ncla.legal
*Counsel for Defendants-Appellants*

## <u>11th CIRCUIT RULE 40-3(b) STATEMENT</u>

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:

*Kokesh v. SEC*, 581 U.S. 455 (2017).

*Liu v. SEC*, 591 U.S. 71 (2020).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

(1) Does disgorgement, ordered pursuant to 15 U.S.C. § 78u(d)(5), (7), exceed the bounds of equity when the Securities and Exchange Commission has identified no harmed investors and intends to return the disgorged monies to the United States Treasury?

(2) Are Defendants entitled to the benefit of the jury's "no liability" determinations, and does a court err or abuse its discretion when it relies on conduct and allegations that the jury rejected?

(3) Does this Court's decision in *SEC v. Warren*, 534 F.3d 1368 (11th Cir. 2008) (per curiam), holding that a defendant's "ability to pay is one factor to be considered in imposing a penalty" for securities violations and that ability to pay

"does not merit significant weight in comparison to the other equities" violate the Eighth Amendment's prohibition on excessive fines?

*<u>/s/ Kara M. Rollins</u>*
KARA M. ROLLINS
ATTORNEY OF RECORD FOR
*Defendants-Appellants*

## TABLE OF CONTENTS

11th CIRCUIT RULE 40-3(b) STATEMENT ........................................................ i
TABLE OF CONTENTS ........................................................................ iii
TABLE OF CITATIONS ........................................................................ iv
ISSUES WARRANTING EN BANC CONSIDERATION ...................................... 1
PRIOR PROCEEDINGS AND DISPOSITION OF THE CASE ............................. 1
ARGUMENT ........................................................................................ 4

I. THE PANEL'S HOLDING PERMITTING DISGORGEMENT TO BE PAID TO THE TREASURY EXCEEDS THE BOUNDS OF EQUITY AND MAKES THIS COURT AN OUTLIER AMONG THE FEDERAL APPELLATE COURTS ........................................ 4

II. THE PANEL'S DECISION SUBVERTS THE JURY'S DETERMINATIONS THAT DEFENDANTS DID NOT PARTICIPATE IN ANY SCHEMES TO DEFRAUD OR DECEIVE INVESTORS ........................................................................ 9

III. THIS COURT'S PRECEDENTS CONFLICT WITH THE EIGHTH AMENDMENT'S EXCESSIVE FINES CLAUSE ........................................................ 13

CONCLUSION .................................................................................... 16
CERTIFICATE OF COMPLIANCE ................................................................ 17
CERTIFICATE OF SERVICE ...................................................................... 18

# TABLE OF CITATIONS

**Cases**

*Austin v. United States*,
509 U.S. 602 (1993) ....................13
*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ....................5, 7
*Kokesh v.* SEC,
581 U.S. 455 (2017) ....................5, 6, 7
*Liu v. SEC*,
591 U.S. 71 (2020) ....................4, 5, 7
*Marshall v. City of Vicksburg*,
82 U.S. 146 (1872) ....................5
*Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*,
467 F.3d 73 (2d Cir. 2006) ....................13
*Rudolph v. Arthur Anderson & Co.*,
800 F.2d 1040 (11th Cir. 1986) ....................11
*SEC v. Govil*,
86 F.4th 89 (2d Cir. 2023) ....................4, 9
*SEC v. Huff*,
758 F. Supp. 2d 1288 (S.D. Fla. 2010) ....................16
*SEC v. Merch. Cap., LLC*,
483 F.3d 747 (11th Cir. 2007) ....................10
*SEC v. Navellier & Assocs., Inc.*,
108 F.4th 19 (1st Cir. 2024) ....................9
*SEC v. Sripetch*,
154 F. 4th 980 (9th Cir. 2025) ....................4, 9
*SEC v. Tex. Gulf Sulphur Co.*,
401 F.2d 833 (2d Cir. 1968) ....................10
*SEC v. Warren*,
534 F.3d 1368 (11th Cir. 2008) ....................1, 13
*Timbs v. Indiana*,
586 U.S. 146 (2019) ....................14
*United States v. Bajakajian*,
524 U.S. 321 (1998) ....................14
*United States v. Schwarzbaum*,
127 F.4th 259 (11th Cir. 2025) ....................13, 14
*Yates v. Pinellas Hematology & Oncology, P.A.*,
21 F.4th 1288 (11th Cir. 2021) ....................14, 15

**Constitutional Provisions**

U.S. CONST., amend. VIII ........................................................................13

**Statutes**

15 U.S.C. § 78j(b) ........................................................................2
15 U.S.C. § 78u(d)(3)........................................................................16
15 U.S.C. § 78u(d)(3)(B) ........................................................................6
15 U.S.C. § 78u(d)(3)(B)(ii) ........................................................................3
15 U.S.C. § 78u(d)(5)........................................................................5
15 U.S.C. § 78u(d)(7)........................................................................5, 6

**Regulations**

17 C.F.R. § 240.10b-5(b) ........................................................................2

**Other Authorities**

Sripetch v. SEC, No. 25-466, Br. of Respondent (Mar. 25, 2026)............................9
Sripetch v. SEC, No. 25-466, Petition (Oct. 14, 2025).............................................9
U.S. Supreme Court, Argument Calendar Session Beginning April 20, 2026..........4

## ISSUES WARRANTING EN BANC CONSIDERATION

(1) Does disgorgement, ordered pursuant to 15 U.S.C. § 78u(d)(5), (7), exceed the bounds of equity when the Securities and Exchange Commission has identified no harmed investors and intends to return the disgorged monies to the United States Treasury?

(2) Are Defendants entitled to the benefit of the jury's "no liability" determinations, and does a court err or abuse its discretion when it relies on conduct and allegations that the jury rejected?

(3) Does this Court's decision in *SEC v. Warren*, 534 F.3d 1368 (11th Cir. 2008) (per curiam), holding that a defendant's "ability to pay is one factor to be considered in imposing a penalty" for securities violations and that ability to pay "does not merit significant weight in comparison to the other equities" violate the Eighth Amendment's prohibition on excessive fines?

## PRIOR PROCEEDINGS AND DISPOSITION OF THE CASE

The Securities and Exchange Commission ("SEC") filed this enforcement action against Defendants Spartan Securities Group, Ltd. ("Spartan"), Island Capital Management ("Island"), Carl E. Dilley ("Dilley"), and Micah J. Eldred ("Eldred") alleging numerous violations of the securities laws. Panel Opinion at 16 ("Op."). After discovery was completed, the Defendants moved for summary judgment, which the court denied. Op. at 18. A 12-day trial was held in July of 2021, and the

jury returned a verdict in Defendants' favor on 13 of the SEC's 14 counts.[1] *See* Tjoflat, J., dissenting at 2; Doc 263 - Pg 9. The rejected counts included allegations that Defendants "aided and abetted" securities violations and participated in "schemes to defraud" with "perpetrators of two microcap securities fraud schemes[,]" Alvin Mirman, Sheldon Rose, Michael Daniels, and Diane Harrison. Op. at 2, 6, 16–17, n.2. The jury returned a verdict in favor of the SEC on a single count finding Spartan, Island, Dilley, and Eldred liable for violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b). Those provisions preclude individuals and companies from making material misrepresentations or materially misleading omissions in connection with the sale of securities. Op. at 31. After trial, Defendants filed a renewed motion for judgment as matter of law under Federal Rule of Civil Procedure 50(b), which the court denied. Op. at 21–22.

SEC subsequently requested various monetary and equitable sanctions, including tier-three civil penalties, permanent injunctions, lifetime penny stock bars, and disgorgement, which the court granted in part. Op.at 22, 24–26. Island objected to the requested disgorgement, in part, because it exceeded the bounds of equity and operated as an impermissible penalty. Doc 297 - Pg 23. The court ordered Island to

[1] The jury's verdict exonerated a fifth defendant, David D. Lopez. *See* Tjoflat, J., dissenting at 9 n.5.

pay $114,520 in disgorgement and $39,874.05 in prejudgment interest to the Treasury. Op. at 24. The court determined that it was "more equitable" to allow disgorgement to be paid to the Treasury than remain with Island because the court determined that the company was "a key player in a scheme to put dubious equities on the market[.]" Doc 297 - Pg 25. It did not consider whether the ordered disgorgement operated as a penalty. *Id*.

Spartan, Island, and Dilley objected to SEC's requested penalties for several reasons, including that they were unable to pay the amount SEC sought. Doc 297 - Pg 18-19. The court ordered all defendants to pay tier two civil penalties under 15 U.S.C. § 78u(d)(3)(B)(ii), noting that it considered "all of the other pertinent facts and circumstances" but made no specific findings regarding Spartan's, Island's, or Dilley's ability to pay. Doc 297 - Pg 37. Spartan and Island were ordered to pay $250,000 each in civil penalties, and Dilley and Eldred were ordered to pay $150,000 each in civil penalties. Doc 297 - Pg 37-38; Docs 298, 299, 300, 301.

On appeal, a panel of this Court affirmed per curiam. *See* Op. at 59–60, 68–70 (affirming disgorgement); 77–79 (affirming civil penalty amounts); 42–46, 49–50, 51, 71, 76–77 (relying on conduct the jury rejected to affirm district court). Judge Tjoflat dissented. Dissent at 1–69. On February 13, 2026, this Court granted Defendants' motion for extension of time to file this petition for panel rehearing or rehearing en banc. App.Doc. 91. This petition is timely filed.

As explained below, rehearing by the full Court is warranted.

## ARGUMENT

### I. THE PANEL'S HOLDING PERMITTING DISGORGEMENT TO BE PAID TO THE TREASURY EXCEEDS THE BOUNDS OF EQUITY AND MAKES THIS COURT AN OUTLIER AMONG THE FEDERAL APPELLATE COURTS

This Court exceeded traditional equitable limits, recognized by the Supreme Court, and broke with its sister circuits by holding that disgorgement may be ordered to the Treasury in SEC enforcement cases even when there are no harmed investors or victims. *See SEC v. Sripetch*, 154 F.4th 980, 986 (9th Cir. 2025), *cert. granted sub nom. Sripetch v. SEC*, No. 25-466, 2026 WL 73091 (U.S. Jan. 9, 2026) ("A victim is therefore required [for disgorgement].");[2] *SEC v. Govil*, 86 F.4th 89, 98 (2d Cir. 2023) (noting that equity requires "that disgorgement must be 'awarded for victims.'" (quoting *Liu v. SEC*, 591 U.S. 71, 79 (2020)); *see also* App.Doc 63 - Pg 1-2; App.Doc 75 - Pg 2; App.Doc 83 - Pg 1-2; App.Doc. 87 - Pg 1. The panel's conclusion "that it would be more equitable to direct the money be paid to the Treasury" than to remain with Island—without considering whether doing so transformed the disgorgement award into a penalty—conflicts with traditional equitable limitations. Op. at 70.

---

[2] *Sripetch* is scheduled for oral argument on April 20, 2026. *See* U.S. Supreme Court, Argument Calendar Session Beginning April 20, 2026, https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalApril2026.pdf.

Disgorgement awards must "fall[] within the limits of equity practice while [also] preventing defendants from profiting from their own wrong." *Liu*, 591 U.S. at 92. While equity permits flexibility within its boundaries, if there is a bright-line rule for conducting equitable balancing it is that "[e]quity never, under any circumstances, lends its aid to enforce a forfeiture or penalty, or anything in the nature of either." *Marshall v. City of Vicksburg*, 82 U.S. 146, 149 (1872); *see also Liu*, 591 U.S. at 76–77 (quoting same); Br. at 46; Reply Br. at 20. That ironclad rule was ignored in this case. In *Kokesh v. SEC*, the Supreme Court explained that disgorgement crosses the line from equity to penalty when "[i]t is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." 581 U.S. 455, 465 (2017); Br. at 46; *see also* Reply Br. at 20–22. *Liu* provides additional guidance to the lower courts about the equitable limitations on disgorgement. 591 U.S. at 84–85 (disgorgement awards may not exceed "net profits from wrongdoing").

Equity limitations apply even when, as here, disgorgement is provided by statute. *See* 15 U.S.C. § 78u(d)(5),(7). Remedies grounded in equity, like disgorgement, and provided for by statute, "must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211, n.1 (2002). In amending § 78u(d), Congress provided no indication that SEC disgorgement should not contain

equity's traditional limitations. *See* 15 U.S.C. § 78u(d)(7). As such, the panel was required to consider whether the ordered disgorgement violated the bounds of equity, including whether it operated as a penalty. It failed to do so.

Here, the disgorgement order "bears all the hallmarks of a penalty[.]" *Kokesh*, 581 U.S. at 465; Br. at 46; Reply Br. at 21–22. Disgorgement was "imposed as a consequence of violating" 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b). *Id.*; Op. at 21, 22; Br. at 46. It was also "imposed for punitive purposes" as it was meant to "deter" future violations of the securities laws. *Kokesh*, 581 U.S. at 464, 465; Br. at 46. SEC admitted as much at the evidentiary hearing, arguing that it was seeking disgorgement for its "deterrent effect" and that enforcement of the securities laws would be undermined if it was not awarded. Doc 303 - Pg 86; Br. at 46. Putting aside that SEC's rationale conflicts with traditional equitable principles, Congress permits the Commission to seek civil penalties that are the "greater of" the set tier amounts or "the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(d)(3)(B)(i)–(iii). Thus, the Exchange Act incorporates a mechanism for stripping violators of their unlawful gains, providing a "deterrent effect." SEC did not use that mechanism here as it sought, and the district court ordered, significantly *higher* civil penalties than the disgorgement amount. Op.at 22, 24–26.

Finally, the ordered disgorgement "is not compensatory" as the money was required to be sent to the Treasury, not to harmed investors or victims. *Kokesh*, 581

U.S. at 464; *see also Liu*, 591 U.S. at 102 (Thomas, J., dissenting) (permitting disgorgement to the Treasury "is inconsistent with traditional equitable principles"); Br. at 46–47; Reply Br. at 21–22. That the panel construed the statute to allow payment to the Treasury does not mean it is permissible in every instance. *Compare* Op. at 63 *with* Reply Br. at 22; *see also Great-West*, 534 U.S. at 211, n.1. The panel was still obligated to consider whether the ordered disgorgement exceeded the bounds of equity, including whether it operated as a penalty. *Kokesh*, 581 U.S. at 463 (applying equitable principles to determine if disgorgement is a penalty); *Liu*, 591 U.S. at 85 (noting that courts had "test[ed] the bounds of equity practice"). That failure contravenes Supreme Court precedent and warrants en banc review.

The panel appears to have misunderstood the parties' stipulation that "[a] distribution to investors of the disgorgement amount requested would be infeasible[,]" *see* Doc 287 - Pg 1, as Island having "conceded that repaying harmed investors was infeasible[.]"[3] Op. at 60. But the parties reached no such agreement. The stipulation intentionally makes no mention of "harmed investors" nor "victims" because whether anyone was harmed was an ongoing disputed point before the district court, including *after* the stipulation was entered. *See, e.g.*, Doc 303 - Pg 112 (defendants' counsel noting that "part of the reason [SEC is] saying it's impractical

[3] At oral argument, the panel asked no questions regarding disgorgement or the stipulation. *See generally*, Oral Argument Recording, No. 22-13129 (Oct. 4, 2023).

to do disgorgement to individuals [is] because [SEC] can't point to anyone who has suffered a loss or even been threatened with a loss"). The district court understood as much. *See* Doc 297 - Pg 37 (recognizing, in the context of civil penalty considerations, "the inability of the SEC to identify any harmed investors"). In the ten-plus years since the underlying conduct occurred, SEC has never identified any harmed investors. Instead, it has presented a broad and diffuse theory of harm, based on hypothetical future losses by unidentified investors, but that is insufficient for disgorgement, which requires a victim. *See* Doc 297 - Pg 22 (district court noting SEC's concession that it could not identify specific harmed investors); *see also* Doc 303 - Pg 86-87; Doc 234 - Pg 24; *cf.* Doc 297 - Pg 36-37.

The parties also contested whether there were any "harmed investors" or "victims" before this Court. *See* Br. at 46–47; Reply Br. at 21; SEC Br. at 46 (arguing "broad and diffuse harm"); App.Doc 63 - Pg 1-2; App.Doc 75 - Pg 2; App.Doc 83 - Pg 1-2; App.Doc 87 - Pg 1. Thus, the panel's conclusion that the "stipulation presented the district court with [only] two options"—options which the panel itself appears to have limited itself to—is in error. *See* Op. at 70. The panel ignored SEC's evidentiary failure to establish the minimal requirement of disgorgement—a victim—placing this Court's decision at odds with the Supreme Court, as well as the

First, Second, and Ninth Circuits.[4] *See Sripetch*, 154 F.4th 986; *Govil*, 86 F.4th 98; *SEC v. Navellier & Assocs., Inc.*, 108 F.4th 19, 41 n.14 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2777 (June 6, 2025); *see also* App.Doc 63 - Pg 1-2; App.Doc 75 - Pg 2; App.Doc 83 - Pg 1-2; App.Doc 87 - Pg 1. En banc review, or panel rehearing, is warranted.

## II. THE PANEL'S DECISION SUBVERTS THE JURY'S DETERMINATIONS THAT DEFENDANTS DID NOT PARTICIPATE IN ANY SCHEMES TO DEFRAUD OR DECEIVE INVESTORS

At trial, the jury found that Defendants were not liable for aiding and abetting securities violations or participating in any scheme to defraud or deceive. *See* Doc 249 - Pg 22, 23-24, 27, 28-29, 30, 32, 36-37, 39-40, 41-42 (Jury Instructions for Counts III–V, VII–XIII); *see also* Doc 250 (Jury Verdict); Doc 256 (Clerk's Verdict). Despite this fact, the panel stated or implied that Defendants participated in fraudulent schemes, or engaged in deceit and lies, as justification for affirming the district court's Rule 50(b) decision, as well as its remedies order. *See, e.g.*, Op. at 42–46, 49–50, 51, 71, 76–77; *compare* Reply Br. at 4–5. Defendants are

---

[4] *Sripetch*'s question presented is: "Whether the SEC may seek disgorgement under 15 U.S.C. 78u(d)(5) and (7) without showing investors suffered pecuniary harm." *Sripetch v. SEC*, No. 25-466, Petition at I (Oct. 14, 2025). If the Supreme Court holds that disgorgement requires a showing of pecuniary harm, then the disgorgement awarded here was improper. *See* App.Doc 83 - Pg at 1-2. SEC has relied on the panel's decision. *See Sripetch v. SEC*, No. 25-466, Br. of Respondent at 35, 36 (Mar. 25, 2026).

entitled to the benefit of the jury's "no liability" determinations, but the panel's erroneous decision subverts those factual findings. En banc review is warranted.

The panel's erroneous reliance on conduct the jury rejected, or SEC did not prove, negates the materiality and "in connection with" requirements for establishing violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5(b). *See* Op. at 31 (quoting *SEC v. Merch. Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007)). With respect to materiality, the panel determined that "a reasonable investor would attach importance to how Spartan was working with Daniels and Harrison to take multiple issuers public, one after the other." Op. at 49; *see also* Op. at 49–50 ("[A] reasonable investor … could believe that Spartan, Daniels, and Harrison were working together to maintain a shell factory and manipulate the over-the-counter market."). It said that such a "belief" would influence what an investor chose to do with a company's securities, *i.e.*, that it was material to the investor's decisions. Op. at 50 (quoting *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968) (en banc)). But Spartan and Eldred were not "working together" with Daniels and Harrison "to maintain a shell factory," and the jury *rejected* SEC's allegations that they were. *See, e.g.*, Doc 249 - Pg 23-24, 36-37, 39-40 (alleging, under Counts III, IV, V, and VII, that Spartan and Eldred "schemed with" Daniels and Harrison); Doc 250 - Pg 2-3 (rejecting same Counts).

The panel further erred in determining that the "in connection with" requirement was met because it likewise relied on conduct the jury rejected. The panel appeared satisfied that Dilley's and Spartan's misrepresentations were "in connection with" the sale or purchase of securities because they were "'part of the *same fraudulent scheme*.'" Op. at 43 (quoting *Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1046 (11th Cir. 1986) (emphasis added)); *see also* Op. at 44, 46. But the jury rejected the existence of such a scheme. *See* Doc 249 - Pg 23-24, 36-37, 39-40; Doc 250 - Pg 2-3. As to Spartan and Eldred, the panel again relied on the mistaken view that they participated in Daniels and Harrison's scheme to create shell companies. *See* Op. at 50–51. Indeed, the panel determined the "misrepresentations" were "calculated to allow Daniels and Harrison to sell public shells[,]" Op. at 51, but such a calculation indicates participation in the underlying scheme, which the jury rejected. *See* Doc 250 - Pg 2-3. The panel decision betrays a view of a "scheme" the jury forcefully rejected, despite SEC's pressing that theory and those counts.

Defendants also challenged both the civil penalties and disgorgement ordered because the court relied on unproven conduct in fashioning those remedies. *See* Br. at 1, 40–41; Reply Br. at 24–25; *see also* App.Doc 70. Defendants argued that this reliance violated their Due Process rights by depriving them of the benefit of the jury's determinations that they did not aid or abet violations of the securities laws and did not participate in any schemes to defraud. *See* Br. at 1, 40–41; Reply Br. at

24–25; App.Doc 70. The panel called Defendants' arguments "conclusory" and rejected them in a footnote. Op. at 57 n.12.

There is nothing conclusory in pointing out the district court calculated the civil penalty and disgorgement amounts on conduct that the jury rejected. As the court's remedy opinion states, the court "considered Defendants' roles in the overall scheme" and "the fact that [Form 211 application] information was originally provided by third parties (at the behest of Mirman and Rose)" when it determined the civil penalty amounts. Doc 297 - Pg 37; *see also* Br. at 41 (quoting same). Similarly, the court ordered Island to pay disgorgement because "Island collected fees from 14 identified issuers *as part of the scheme*[,]" Doc 297 - Pg 19 (emphasis added). It also balanced the equities in favor of returning funds to the Treasury because Island was "a key player in a scheme to put dubious equities on the market[.]" Doc 297 - Pg 25. But the jury rejected every SEC allegation that Defendants participated in any "scheme" or "schemed" with others. *See* Doc 250; Doc 256. They schemed with no one. So, the court's remedies calculations contradict the jury's verdict.

The panel erred by disregarding the jury's determinations in affirming the district court's Rule 50(b) and remedies orders. En banc review should be granted.

## III. THIS COURT'S PRECEDENTS CONFLICT WITH THE EIGHTH AMENDMENT'S EXCESSIVE FINES CLAUSE

This Court's decision that a defendant's "ability to pay is one factor to be considered in imposing a penalty" for securities violations and "does not merit significant weight in comparison to the other equities" violates the Eighth Amendment's prohibition on excessive fines. *See Warren*, 534 F.3d at 1370; U.S. CONST., amend. VIII. *Warren* commands courts in this Circuit to discount constitutional concerns and treat them the same as general factors. Defendants Spartan, Island, and Dilley challenged the civil penalties ordered because they exceeded their ability to pay and violated the Excessive Fines Clause, but the panel held that it was bound by *Warren*. Op. 77–79. En banc review should be granted to consider whether the *Warren* decision conflicts with the Excessive Fines Clause.

The Excessive Fines Clause applies to civil cases if the penalty operates as a "punishment." *Austin v. United States*, 509 U.S. 602, 610 (1993). That is because the "purpose of the Eighth Amendment … was to limit the government's power to punish." *Id.* A civil penalty is subject to the Excessive Fines Clause if it "in any way serves 'either retributive or deterrent purposes[.]'" *United States v. Schwarzbaum*, 127 F.4th 259, 270 (11th Cir. 2025) (quoting *Austin*, 509 U.S. at 610). Section 78u(d)(3) punishes violators and deters future violations. *See Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006).

As such, § 78u(d)(3) civil penalties are "fine[s] subject to the Eighth Amendment's Excessive Fines Clause." *Schwarzbaum*, 127 F.4th at 274.

This Court's *Warren* decision did not consider whether § 78u(d)(3) penalties must be evaluated under the Excessive Fines Clause. *Warren*, 534 F.3d 1370 (stating that the Court had not "located" any "decisional law stating that the securities laws impliedly prohibit a district court from imposing penalties or disgorgement in excess of a violator's ability to pay"). But, as explained below, the Eighth Amendment prohibits imposing penalties without considering a defendant's ability to pay, and thus limits § 78u(d)(3) civil penalties.

The Excessive Fines Clause traces its roots to Magna Carta, which "[i]n both substance and procedure … protected an offender's livelihood." *See Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1322 (11th Cir. 2021) (Newsom, J., joined by Jordan, J., concurring); *see also Timbs v. Indiana*, 586 U.S. 146, 160–68 (2019) (Thomas, J., concurring) (recounting the Excessive Fines Clause's history). The Supreme Court has determined that excessiveness turns on whether a penalty "is grossly disproportional to the gravity of the defendant's offense[.]" *United States v. Bajakajian*, 524 U.S. 321, 337 (1998) (addressing forfeiture of currency). But in deciding so, the Supreme Court took "no position on the question whether a person's income and wealth are relevant considerations in judging the excessiveness of a fine[.]" *Timbs*, 586 U.S. at 151–52. Given the

Excessive Fines Clause's consistent lineage, "[t]here's good reason to think … the phrase carried with it an understanding that a fine's excessiveness (or lack thereof) depended on *both* the relationship between the fine *and* the offense and that between the fine and the offender." *Yates*, 21 F.4th at 1323 (Newsom, J., joined by Jordan, J., concurring) (emphasis in original); *see also id.* at 1335 (Tjoflat, J., concurring in part and dissenting in part) (suggesting that district courts should consider "the characteristics of the offender").

The district court did not consider Spartan's, Island's, or Dilley's financial circumstances in determining the civil penalties it ordered. *Compare* Doc 297 - Pg 34 (listing factors) *with* Doc 297 - Pg 37 (discussing culpability and mentioning generalized consideration of "pertinent facts and circumstances"). This failure is obvious as the court imposed the same penalty amount against Dilley and Eldred (who did not claim inability to pay), stating that the penalty amount was the same for both because it "believe[d] that [Dilley and Eldred] have equal culpability and should face equal civil penalties." Doc 297 - Pg 37-38. It did not mention any reduction in any penalty amount because of Defendants' inability to pay. *Id*. Despite the court's stated rationale, the panel determined that the court "*did* consider Dilley's ability to pay" because it recited the factors courts generally consider in ordering penalties. Op. at 78 (emphasis in original). Dilley is unable to pay the penalty, and

it will blight the rest of his life. Doc 303 - Pg 20, 41, 49; Doc 273-2 - Pg 2. Hence, a key penalty factor was not considered by either the district court or the panel.

*Warren* bound the district court to treat Spartan's, Island's, and Dilley's ability-to-pay claims on equal footing with other equities. Even if it did consider those arguments, it did not give them "significant weight" and treated constitutional concerns the same as general, court-made factors. *See* 15 U.S.C. § 78u(d)(3) (granting courts power to "impose" civil penalties "upon a proper showing" but providing no standards for calculating penalties within the tier ranges); *see, e.g.*, *SEC v. Huff*, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010), *aff'd* 455 Fed. App'x 882 (per curiam). En banc review should be granted to consider whether the panel decision, in following the *Warren* precedent, conflicts with the Excessive Fines Clause.

## CONCLUSION

This Court should grant rehearing en banc or panel rehearing.

Respectfully submitted,

*/s/ Kara M. Rollins*
KARA M. ROLLINS
JOHN J. VECCHIONE
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Phone: (202) 869-5210
Kara.Rollins@ncla.legal
John.Vecchione@ncla.legal
*Counsel for Defendants-Appellants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limits under Fed. R. App. P. 28(a)(10) and typeface and typestyle requirements under Fed. R. App. P. 32(a)(5)-(6) and length requirements under 11th Cir. R. 40-4 because this petition contains 3,893 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), prepared in proportionally spaced typeface using Microsoft Word for Office365 Times New Roman 14-point font.

Dated: March 30, 2026

*/s/ Kara M. Rollins*
KARA M. ROLLINS
*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system which sent notification of such filing to all counsel of record.

Dated: March 30, 2026

*/s/ Kara M. Rollins*
KARA M. ROLLINS
*Counsel for Defendants-Appellants*